JOHN GEARHART *v.* EDWARD and FRANCIS JORDAN, trading as JORDAN & BROTHERS.

1. As between purchasers in common of an estate bound by a joint lien, each is bound to contribute only its proportion towards the discharge of the common burthen, and beyond this is to be considered simply as the surety of the remaining purparts. In this respect they are to be treated as the several estates of joint debtors, one being surety of the others; and if the purpart of one is called

on to pay more than its proportion, the tenant or his lien-creditors are entitled to stand in the place of the satisfied creditor to the extent of the excess, which ought to have been paid out of the other shares.

2. It would be error to permit the challenge of a juror, after he was sworn, for a cause existing when he was called to the book: the proper course would be to direct a juror to be withdrawn, and to call a fresh jury.

ERROR to the Common Pleas of Columbia.

This was a feigned issue, directed by the Court of Common Pleas of Columbia county.   On the 10th May, 1838, Peter Baldy obtained a judgment against Thomas Clark, in the said court, for $509.37.   At that time Clark was seised in fee of a house and lot in Danville, on which this judgment became a lien.   On the 22d September, 1838, Clark agreed to sell the house and lot to John Gearhart, the plaintiff in error, and George B. Brown, for $1,800, and on the 3d January, 1839, he and his wife executed a deed to them for the same.   This judgment of Peter Baldy was revived by *sci. fa.* and *al. sci. fa.* issued against Clark, with notice to Gearhart and Brown, as *terre-tenants*, on the 19th August, 1841, and again on 23d April, 1845.   A. & J. B. Stevenson obtained judgment against George B. Brown, on the 19th November, 1841, for $300.90.   Hart, Cummings & Hart obtained judgment against him on the 22d November, 1841, for $589.07, and Jordan & Brothers, the defendants in error, obtained judgment against him 7th January, 1842, for $495.36.   Brown afterwards became bankrupt, and on the 5th October, 1845, received his certificate of discharge. Writs of *sci. fa.* were issued on these judgments against Brown, who pleaded his discharge as a bankrupt, and judgment "*de terris*" was entered in each case on the 24th April, 1845.   Hart, Cummings & Hart issued a *fi. fa.* on their judgment, which was "levied on an undivided moiety or half part of a certain piece of ground in Danville, seized, &c., as the property of George B. Brown."   A *vend. ex.* then issued, by virtue of which the sheriff, on the 1st March, 1847, sold Brown's moiety of the said house and lot for $2,050, which was applied to the payment of said judgments of Peter Baldy, A. & J. B. Stevenson, and Hart, Cummings & Hart, and in part payment of the judgment of Jordan & Brothers, leaving part unsatisfied.   At April Term, 1847, Jordan & Brothers presented their petition to the court, praying the court to decree, in the distribution of the proceeds of said sale, that only one-half of Baldy's judgment against Clark be paid out of the proceeds of the said sale, or if the whole should be paid out of the same, that they, the petitioners, might be subrogated to the rights of Peter Baldy, under his judgment against the moiety of the said lot

remaining unsold, to the extent of one-half of the said judgment. On this petition the court granted a rule to show cause why the prayer of the petitioners should not be granted, which rule was served on Gearhart, who filed an answer, alleging that the facts set forth in said petition, if true, were not sufficient in law or equity to entitle the petitioners to such subrogation; and further, that at the time of the purchase of the said lot from Clarke, he (Gearhart) and Brown were partners in the storekeeping business; that the same was paid for out of the partnership funds, and that, on the settlement of the partnership concerns, Brown was largely, and to an amount exceeding the one-half of the said judgment, indebted to the said Gearhart—which indebtedness Brown had never satisfied; that Brown had been discharged as a bankrupt; and praying an issue, &c. Jordan & Brothers denied the facts set forth in the answer, and also prayed an issue. The court directed an issue to be formed: Jordan & Brothers to be plaintiffs, and John Gearhart defendant. By agreement of the parties filed, it was agreed that the cause be tried upon its merits, without form, and that the petition and answer be taken in place of a feigned issue; either party to be entitled to take out a writ of error. The cause came on for trial at August Term, 1847, and after the jury were sworn, one of the jurors stated that he was a relative of John Gearhart; that Gearhart was married to the juror's aunt; whereupon, before any testimony was given, or the cause was opened on the part of the plaintiffs, the counsel for the plaintiffs challenged the juror, alleging that they did not know of the relationship of said juror to defendant, till the juror made it known in open court. The court sustained the challenge of the juror, and directed another to be called in his stead, reserving the right of the defendant below to challenge peremptorily, as he waived his former challenge. Defendant below excepted to the discharge of the juror, and the court sealed a bill, which is the first error assigned. The plaintiffs below then gave in evidence all the before-mentioned judgments, and revivals of the same; the *fi. fa* and *vend. ex.* issued in the judgment of Hart, Cummings & Hart, and the returns showing the levy and sale of Brown's moiety of the house and lot for $2,050; also the agreement dated 22d September, 1838, between Clark and Gearhart and Brown, for the purchase of the house and lot, and the deed of Clark and wife to Gearhart and Brown, dated 3d January, 1839. They then offered in evidence an agreement, dated 22d February, 1845, between Gearhart and Brown, for the sale to Brown of Gearhart's moiety of said house and lot. This was objected to by

the defendant below as irrelevant, but was admitted by the court, who sealed a bill, which is the second error assigned.

The agreement of the 22d February, 1845, was of the following effect :—

"The said John Gearhart agrees and covenants, for himself, his heirs, &c., to and with the said George B. Brown, his heirs and assigns, by these presents, for the consideration hereinafter stated, to grant, bargain, and sell, and convey unto the said G. B. B., his heirs and assigns, in fee-simple, clear of all encumbrances (except one judgment in favour of Peter Baldy, hereinafter mentioned), all his interest (being the undivided half part or moiety) in all that certain lot of ground situated in the town of Danville, &c., being the same lot of ground which Thomas Clark and wife, by deed dated January 3d, 1839, conveyed to said J. G. and G. B. B. The said J. G. hereby agrees and covenants, to grant and convey to the said G. B. B., all his interest, &c., &c., of, in, to, or out of said lot, &c., unto the said George, his heirs and assigns: in consideration whereof, the said G. B. B., for himself, his heirs, &c., doth covenant and agree, to and with the said J. G., to pay him the sum of five hundred dollars, and also to take up, pay, and satisfy, a certain claim which Thomas Yorks has against said Brown and Gearhart, being a note given by Gearhart, Brown, and Slater, on which judgment has been obtained against the said J. G., in Northumberland county, the amount of said claim being, &c.; also, to take up, pay, and satisfy, another certain note, which George Gearhart has and holds, against said J. G. and G. B. B., the amount of which, &c.; also, to pay and satisfy one other note, which Isaac Wolverton has and holds, against said Gearheart and Brown, the amount of which note, &c.; also, to take up, pay, and satisfy, a certain note which Peter Baldy has and holds, against the said J. G., the amount of which note, &c.; all of which notes and obligations are to be taken up, paid, and satisfied, by the said G. B. B., on or before the first day of April next; so that the said J. G. shall not be in any manner liable for the payment of the said several sums, or any part thereof, to the persons hereinbefore named, or any other person into whose hands the same may come. The said G. B. B. agrees that the judgment in favour of Peter Baldy against said Gearhart and Brown, entered in the Court of C. P. of Columbia county, and now existing as a lien, against the whole of said lot, shall remain, and that he will take the said undivided half part or moiety, hereby agreed to be conveyed to the said George, by the said John, subject to the payment of so much or such part

of the said judgment in favour of said Baldy, as the interest or moiety belonging to the said Gearhart was or is bound for, by virtue of the said judgment, so entered up against the whole lot as aforesaid; it is also agreed between the parties, that the said G. B. B. shall have and receive for his own use, the amount of rents due and owing, or to become due from J. P. Groves, for the use of that part of the dwelling-house occupied by said Groves, since the first day of April last past; the deed for the premises to be made and delivered, on the first day of April next, upon the payment of, &c., and taking up, satisfying, and paying the before-mentioned several notes and obligations, amounting to about three hundred and sixty-seven dollars and fifty cents. In witness whereof," &c.

The plaintiffs rested here; and the defendant gave in evidence the certificate of the discharge of Brown, as a bankrupt, dated 8th October, 1843, and also rested.

The court below (ANTHONY, President) charged the jury as follows:—

"This is a feigned issue, to try whether Peter Baldy's judgment against Thomas Clark, revived against Gearhart and Brown, ought to be paid out of the proceeds of the sheriff's sale of the real estate of George B. Brown, which is in court for distribution; and if it should thus be paid, whether Jordan & Brothers, the insolvent creditors of Brown and Gearhart, should be subrogated to the rights of Peter Baldy, by virtue of the judgment against Thomas Clark, revived against Gearhart and Brown. Although certain facts were asserted on the one hand, and denied on the other, which required an issue to be formed, to be determined by a jury; yet, as there are no disputed facts before you, and the evidence is all either matter of record, or in writing, the question becomes one of law, and relieves the jury from responsibility, and throws it upon the court. As the case will, in all probability, be removed to the Supreme Court for final adjudication, I have concluded to charge you, that upon all the facts, the defendants in the issue have a right to be subrogated, so that a moiety or half part of the judgment of Peter Baldy will enure to their use, against the interest of John Gearhart, in the house and lot on which Baldy's judgment was a lien. I therefore instruct you, that, in the issue formed by the parties, your verdict should be for the plaintiffs."

Verdict and judgment for the plaintiffs.

In this court the following assignment of errors was made:—

1. The court erred in discharging one of the jurors, after the

jury had been sworn, as mentioned in defendants' first bill of exceptions.

2. The court erred in admitting in evidence the article of agreement between John Gearhart and George B. Brown, as mentioned in defendants' second bill of exceptions.

3. The court erred in charging the jury, that their verdict should be for the plaintiffs.

*Comly* and *Leidy*, for the plaintiff in error.

1. No juror can be challenged without consent after he has been sworn, unless it be for some cause which happened since : 5 Bacon, Abr. p. 365, ed. 1844, and cases there cited ; 1 Sellon's Prac. 460 ; 4 Dall. 353 ; § 140, act 14 Ap. 1834, Purdon, 674 ; Kennedy *v.* Dale, 4 W. & S. 176.

2. The agreement of 22d Feb. 1845 was totally irrelevant.

3. The charge in favour of plaintiff is against every principle of equity.

1. Gearhart had rights that could be destroyed by the subrogation. The agreement of 22d Feb. 1845, proves there were outstanding partnership debts, for which G. was liable, or which he had paid : Sterling *v.* Brightbill, 5 W. 229 ; Evans *v.* Duncan, 4 W. 24 ; 1 Story, Eq. § 642. It was for the Jordans to prove our liability to pay half this judgment.

2. The two funds did not belong to the same person, but one to Gearhart, and one to Brown : Bank *v.* German, 3 Barr, 303 ; 1 Story, Eq. §§ 633, 643 ; Ebenhardt's Appeal, 8 W. & S. 332 ; Neff *v.* Miller, 8 Barr, 357.

3. Baldy, for whom the defendants in error seek to be subrogated, was not a creditor of their debtor, but merely had a lien on the land of Gearhart & Brown : Ex parte Kendall, 17 Vesey, 520 ; Kyner *v.* Kyner, 6 W. 225.

*John Cooper* and *Frick*, contrà.—1. The challenge did no injury, and is therefore no ground of reversal : 8 W. & S. 391. It would have been more regular to have discharged the panel.

2. The agreement was evidence to show out of what fund or land, and by whom, the lien of Baldy on Gearhart's half was to be paid : Benner *v.* Houser, 11 S. & R. 352 ; and to contradict the allegation of partnership.

3. 3 Atkyns, 447 ; Ambler, 614 ; 5 Bouvier's Bacon, 371 ; Lathrop and Dale's Appeal, 1 Barr, 512 ; 3 Barr, 300 ; 3 Campbell, 207 ; 1 Johns. Ch. R. 217 ; 4 Ib. 412 ; Presb. Corp. *v.* Wallace, 3 Rawle, 162 ; Story's Eq. §§ 633, 642, 643, 644 ; Nailer *v.*

Nailer, 10 S. & R. 450; 8 W. & S. 334; 6 W. 221; 5 W. 229; Donley v. Hays, 17 S. & R. 400; 1 Starkie's Ev. pt. 3, 376, 4th ed.; Pipher v. Lodge, 16 S. & R. 214; 3 Coke Rep. 14; 3 P. W. 98; 1 Vernon, 219, 455; Cowden's Est. 1 Barr, 267; 8 Barr, 347.

The opinion of this court was delivered by

BELL, J.—This case is identical in principle with Neff v. Miller, 8 Barr, 347. That determination, and the authorities upon which it is based, settle that subrogation is admissible wherever a joint creditor of two funds, belonging to different debtors, appropriates one of them in payment of his debts, in disappointment of another creditor of that fund; provided the untouched fund is that from which, in fairness and honesty, payment of the joint debt ought first to have been drawn. In the ordinary case of a creditor with right of recourse to two funds belonging to the same debtor, and another creditor, who can look to but one of these funds as the source of satisfaction, a chancellor will, *of course*, interfere for the protection of the several creditors, for here there is no risk of doing injustice to third persons. But the administration of this equity is, by no means, confined to these instances, as would seem to have been at one time thought, and perhaps intimated in Kyner v. Kyner, 6 W. 225, and Harrisburg Bank v. German, 3 Barr, 303. Yet, when the funds or subjects of lien belong to different persons, the inquiry is whether the debt, which is a lien on both of them, or any part of it, ought, in justice, to be paid by one of them in relief of the other. If so, chancery will aid the interest of a creditor of the latter fund, against an appropriation of it in lieu of the fund primarily liable. Thus, if a judgment be recovered against A. and B., the latter being merely the surety of the former, for satisfaction of which B.'s land is sold, and his separate lien-creditors thus deprived of the means of payment, they are entitled to be subrogated to the place of the joint judgment-creditor, so as to be let in on the land of the principal debtor, even against subsequent encumbrances. So, also, if the judgment-debtors be partners, and on a settlement of accounts between them, it turns out one ought to pay the full amount of the judgment in discharge of the other's estate: Dorr v. Shaw, 4 Johns. Ch. Rep. 17; Ex parte Kendell, 17 Ves. 520. For the same reason, the rule embraces purchasers, in common, of an estate bound by a joint lien. As between themselves, the purpart of each is liable to contribute only its proportion toward the discharge of the common burden, and beyond this, is to be regarded simply as the surety of the remaining purparts. In this

respect they are to be treated as the several estates of joint debtors, one being surety of the other; and, if the purpart of the one is called on to pay more than its due proportion, the tenant, or his lien-creditors, upon the principle settled in Fleming v. Beaver, 2 R. 128, Croft v. Moore, 9 W. 451, and Neff v. Miller, is entitled to stand in the place of the satisfied creditor, to the extent of the excess which ought to have been paid out of the other shares. The doctrine was so applied in Champlain v. Williams, 9 Barr, 341, where a purchaser of part of a tract of land, encumbered by a mortgage, was subrogated to the rights of the mortgagee, whom he had been compelled to pay, as against his co-tenants; and under the reasoning of Morris v. Oakford, 9 Barr, 498, the rule would be the same, even against the subsequent lien-creditors of the defaulting tenant. But where the original debt springs from a partnership transaction, it was ruled in Sterling v. Brightbill, 5 W. 229, there can be no substitution before a settlement of the partnership accounts; clearly evincing, that the partner whose estate has been taken in satisfaction, in defeat of his own creditors, was not indebted to his fellow, and that no countervailing equities existed in the latter. And it was strongly intimated that the duty of showing this devolved on the party claiming to be substituted, in the clearest manner. Though the cogent remarks of the learned judges who there delivered the opinion, were called for by the peculiarities of that case, to which all interested in the question had not been made parties, and are perhaps, applicable in all cases of recent partnership, we do not perceive their relevancy to this controversy. It is true, the defendant in the feigned issue, ordered by the Common Pleas, by way of answer to the plaintiff's petition, averred that the property encumbered by Baldy's judgment was purchased with partnership funds; Gearhart and Brown being then partners in trade, and that on the settlement of their partnership concerns, Brown was found to be indebted to Gearhart in an amount exceeding one-half the judgment recovered by Baldy, which indebtedness has never been discharged. This was denied by the plaintiff, and an issue was thus framed, the parties having agreed to try the right to subrogation on the bill and answer. Yet, on the trial of this issue, no evidence was offered of the existence of the alleged partnership, except what may be extracted from the agreement of February, 1845, between Gearhart and Brown, given in evidence by the plaintiff for an entirely different purpose. By that instrument, Brown covenants to pay off certain claims against Brown and Gearhart, in part consideration of the conveyance to be made. Now,

this may indicate that a partnership once existed, but this is nowhere asserted to have been the fact. Nor is it anywhere positively intimated that the claims to be paid were the debts of a recent or subsisting partnership. Certainly, having asserted it as his answer to the pretension set up by Jordan & Brothers, it lay upon Gearhart to make out, at least with some degree of certainty, a partnership; but though Brown himself was called as a witness, he proved nothing either as to the alleged partnership or his indebtedness, on that account, to Gearhart. But had the existence of a late firm been established, surely under the circumstances surrounding this case, some evidence of the avowed indebtedness of Brown to Gearhart, or at least of an unsettled account between them, should have been given. Gearhart, the party apparently solely interested in the question at issue, was properly in court; differing the case, in this particular, from Sterling v. Brightbill, and had himself affirmed the only facts upon which issue was joined. By the article of agreement, already noticed, it was confessed his moiety of the property bound, was subject to the payment of one-half the amount of Baldy's judgment; and the agreement was properly admitted to show this, if for nothing else; and yet Gearhart tendered not a particle of proof tending to show the smallest share was due to him from Brown, or even the existence of an open account between them. Under such a condition of facts, to ask the court to presume the truth of the answer was to tax its credulity beyond the stretch of sober reason. Had the defendant succeeded in raising a question on this head, by even inconclusive proof, or furnished a ground, though narrow, upon which to build such an hypothesis, he might, with some show of propriety, have called on the court to pause before acceding to the prayer of the petition; but, in the absence of everything like evidence, I repeat, the principle developed by the case already twice alluded to, is inapplicable here. Something was due from him who set up a partnership, to defeat the plaintiff's otherwise undoubted equity. In no respect was this duty discharged, and the transaction itself furnished nothing to fill the *hiatus*.

There is nothing in the suggestion, that the agreement shows the claims against Gearhart and Brown were to be paid with part of the purchase-money of the property, and, therefore, not Gearhart's funds, to raise a balancing equity in the latter. The answer is twofold: first, no partnership was shown; and, second, if this were otherwise, the consent of Brown to pay these claims, in part consideration of his purchase, shows—if it shows anything ger-

man to the purpose—that Gearhart was, as between the contracting parties, alone liable to pay them. No presumption of indebtedness on account of partnership transactions can, therefore, be fairly drawn from this.

It follows that, as the case stood, the court below was right in assuming to itself, as matter of law, the decision of the controversy. There was, in truth, no disputed fact upon which the jury could be called to pass.

Considered in connexion with this fact, the first error assigned sinks into insignificance. There was undoubtedly a mistake committed in permitting the challenge of a juror after he was sworn, for a cause existing when he was called to the book. The authorities cited for the plaintiff above, abundantly establish this. The proper course, on a persistence in the objection, would have been, to direct a juror to be withdrawn, and then to call a fresh jury into the box. But, as it turned out, there was nothing for a jury to decide; and, consequently, the error committed inflicted no injury on the defendant below. We have often said, we will not reverse a judgment for such a mistake.

Judgment affirmed.