## Donaldson, for use, v. Cotterell et al.

*Sci. fa. sur mortgage—Mortgaged premises, parceled and sold—Judicial sale in inverse order of purchase—Effect of clause "under and subject"—Act of June 12, 1878.*

1. Where land subject to a mortgage is divided into parcels and sold by the mortgagor free of encumbrance, in such case, upon foreclosure, the purchasers are liable in the inverse order of their purchases.

2. If a vendee purchases "under and subject" to a mortgage, he makes the mortgage debt his own; so that if, on foreclosure, there is a deficiency which the vendor is required to pay, such amount may be recovered by him from such vendee, the words "under and subject" being construed as an implied warranty to indemnify, not *de terris* merely, but co-extensive with the original obligation.

3. The Act of June 12, 1878, P. L. 205, does not alter the liability of a grantee to his grantor, but only has application to the grantee's obligation to the holder of the encumbrance.

4. Where one primarily liable (whether the liability be personal or *in rem*) on a mortgage procures an assignment of such mortgage and proceeds against those secondarily liable, the court will, upon rule, control such abortive execution.

Rule to control execution on *lev. fa.* C. P. Washington Co., May T., 1924, No. 43.

Before Brownson, P. J., and Cummins, J.

*Thomas L. Anderson,* for petitioner and rule.

*J. C. Bane,* with him *Walter P. Rainbow,* for respondent.

CUMMINS J., Feb. 1, 1926.—On Oct. 23, 1920, one Mary M. Donaldson conveyed to Theodore R. Cotterell 21.57 acres of land, subject to a purchase-money mortgage of $9900. On Nov. 4, 1920, Cotterell conveyed the Pittsburgh coal underlying said land to one John M. Greek "under and subject"

to said mortgage; and on the same day Cotterell received back from Greek a lease to mine said coal. On March 21st of the following year Cotterell conveyed the "surface" of said land to Willcott Coal Company, and on the same day assigned to said coal company the aforesaid coal lease. Greek later died, the title to said coal thereby becoming vested in his wife, Sallie B. Greek.

The Willcott Coal Company became involved financially, and as a result [there were] numerous wage claims, a large amount of which at least, if not all, have been reduced to judgment and made a lien on said coal company's said surface land and coal lease.

On Sept. 29, 1923, Sallie B. Greek declared a forfeiture of said coal lease, which said forfeiture was acquiesced in by said coal company, resulting in the execution and delivery by it to said Sallie B. Greek of a quit-claim deed, thereby relinquishing any claim to any interest which said coal company might have in said coal lease, and the said coal is now held by said Sallie B. Greek.

On Jan. 17, 1924, said Sallie B. Greek paid in full and took an assignment for her use of the aforesaid mortgage, which still, as far as the records show, remains a lien on both the coal owned by Mrs. Greek and the surface owned by said Willcott Coal Company.

While the several titles are thus vested and subject to the liens aforesaid, Mrs. Greek instituted and prosecuted to judgment a proceeding to foreclose said mortgage, and later caused to be issued on said judgment an *alias* writ of *lev. fa.* requiring the Sheriff of Washington County to sell said land, including, of course, both coal and surface. Thereupon the sheriff, at the instance of Mrs. Greek, proceeded to advertise for sale, under said writ, the surface alone, out of which she undertook to thereby collect the entire mortgage debt.

To prevent such abortive execution of the writ of *lev. fa.,* one Howard M. Campbell, one of the aforesaid lien creditors of said coal company, having been permitted to intervene for that purpose, secured a rule upon plaintiff in said foreclosure proceeding to show cause why said *alias* writ of *lev. fa.* should not be stayed unless and until the coal in and underlying said land described in the mortgage aforesaid should be embraced and included in the property to be so sold.

Where land subject to a mortgage is divided into parcels and sold by the mortgagor at different times and to different grantees free of encumbrance, in such case, in the event of foreclosure, the purchasers are liable in the inverse order of their purchases (Mevey's Appeal, 4 Pa. 80; Schrack *v.* Shriner, 100 Pa. 451; Milligan's Appeal, 104 Pa. 503; Turner *v.* Flenniken et al., 164 Pa. 469); but this principle has no application where the grantee has purchased "under and subject" to such mortgage. Under a number of the earlier authorities the grantee in such case was not only held on an implied covenant to indemnify the grantor, but was held to be personally liable for the mortgage indebtedness: Metzgar's Appeal, 71 Pa. 330; Keyzey's Case, 9 S. & R. 71; Kearney *v.* Tanner, 17 S. & R. 94; Campbell *v.* Shrum, 3 Watts, 60; Bell *v.* Bell, 32 Pa. 309; Taylor *v.* Preston, 79 Pa. 436; Kostenbader *v.* Spotts, 80 Pa. 430.

It is at least clear under the foregoing authorities that Mrs. Greek should not be permitted to sell the surface apart from the coal, which coal is at least equally subject to the mortgage lien; for if the owner of the surface were thus compelled to pay the entire, or more than its share of the, mortgage debt, it (the coal company) would be entitled to contribution from Mrs. Greek (Gearhart *v.* Jordan, 11 Pa. 325; Hebb *v.* Moore, 66 Md. 167); and if, in

that event, entitled to contribution, it, or those claiming through it, are equally entitled to have such execution process so controlled by the court as not to effect such inequity.

The conclusion already reached disposes of the questions raised by the rule to show cause issued, but perhaps not all of the equities involved. Where a vendee of property takes "under and subject" to a mortgage, such vendee thereby makes the mortgage debt his own; so that if, on foreclosure, there is a deficiency which the vendor is required to pay, such amount may be recovered by him from such vendee, the words "under and subject" being construed in such case as an implied covenant of indemnity, not *de terris* merely, but co-extensive with the original obligation; and in such case it is held that the Act of June 12, 1878, P. L. 205, does not alter the liability of the grantee to his grantor, but only has application to the contractual relation existing between the grantee and the holder of the encumbrance: May's Estate, 218 Pa. 64, 69. And see Com. *v.* Du Pont Land Co., 254 Pa. 449.

Cotterell was the owner of the land, coal and surface. He sold the coal to John M. Greek for a mere nominal consideration, but "under and subject" to the mortgage in question. As between Cotterell and Greek, the latter thereby made the mortgage debt his own, thereby agreeing to indemnify Cotterell against such indebtedness, not *de terris* merely, but co-extensive with the mortgage debt. As between Donaldson, the mortgagee, and Greek, the obligation of the latter was, of course, *de terris* only. The mortgagee, Donaldson, had a right by execution to make his debt both from coal and surface, but Cotterell had a right, under the equity of marshaling, to insist that Greek's coal be sold prior to the surface. If the mortgage were still owned by Donaldson, the coal by Greek and the surface by Cotterell, and Greek paid the mortgage in full, it is clear that he would have had no right of contribution over against Cotterell, for he would have but paid the debt which he had agreed to pay as a consideration upon making purchase of the coal. Cotterell has a right to insist that the John M. Greek Estate pay this mortgage indebtedness, if it has not already, directly or indirectly, done so. The coal company, as vendee from Cotterell of the surface, did not take same agreeing with the vendor to pay any part of the mortgage debt. The coal company, the owner of the surface, as between it and the mortgagor, can be required to pay, but can insist that the coal be sold first. Mrs. Greek having received this coal land from her husband's estate under and subject to the mortgage, and having paid the mortgage debt in full, it may be that this mortgage should have been satisfied of record. It is at least doubtful whether she can now, as between her and those holding liens against the surface, claim that the lien of the mortgage in question has priority over said wage liens against the surface alone. But there is not before the court sufficient evidence to pass upon these questions, nor are they involved in the rule to show cause now before the court.

### Decree.

And now, Feb. 1, 1926, the rule to show cause heretofore issued upon use-plaintiff is made absolute and the use-plaintiff and all others now or which may be hereafter interested in the above stated proceeding to foreclose are hereby restrained from issuing, or causing to be issued, any writ, process or order for the sale of the land in question, apart from the coal of the Pittsburgh or river vein therein or thereunder, or from advertising or undertaking to sell said land referred to in the petition for said rule separate or apart from the coal therein or thereunder. The costs of this proceeding by rule to be paid by the use-plaintiff.     From Harry D. Hamilton, Washington, Pa.