## Jeffrey's Estate

*Joseph W. Ray*, of *Shelby, Hackney & Ray*, for appellant.

*Linn V. Phillips*, Deputy Attorney General, for Commonwealth.

MATTHEWS, P. J., July 1, 1938.—The question here involved may be stated thus: Is the indebtedness evidenced by the joint and several bond of husband and wife, and secured by mortgage on real estate held by them as tenants by the entirety, deductible as a debt of the deceased husband's estate in the assessment of transfer inheritance tax under the Act of June 20, 1919, P. L. 521, 72 PS §2302?

It does not appear that the question has been decided by an appellate court.

Robert H. Jeffrey and Elizabeth Brooke Jeffrey, his wife, on April 10, 1935, made, executed, and delivered to Home Owners' Loan Corporation their joint and several

bond to secure the payment of the sum of $6,595, which bond is secured by mortgage on a property situate in South Union Township, Fayette County, Pa., and held by them as tenants by the entirety. Robert H. Jeffrey died on April 23, 1936, at which time the said indebtedness had been reduced to $6,292.35. Letters of administration on his estate were granted to the surviving widow, who, at the appraisement of the assets of the estate for the assessment of transfer inheritance tax, claimed a deduction as a lawful debt of decedent the said sum of $6,292.35. The deduction was not allowed, and the matter now comes before us on appeal.

The solution to the problem depends on whether the mortgagee may legally recover its claim from the assets of decedent's estate, without reference to the security afforded by the mortgage. If the mortgagee, on presentation of the mortgage bond, is entitled to payment from the personal estate of decedent, or, if that is insufficient, payment may be enforced from the real estate of decedent, then it is clear that the estate is primarily liable. If such is the law, then the indebtedness should be deducted in determining the clear value of the estate for assessment of the tax; otherwise the deduction should not be allowed.

It will be observed that if the joint indebtedness of husband and wife is ordered paid from the funds of the deceased husband's estate, the result might be to prevent all creditors from receiving payment in full. It might produce insolvency. Of course, it would reduce the amount for distribution among heirs. If the joint indebtedness equaled the net estate, the heirs would take nothing, but the surviving spouse would possess the mortgaged premises discharged of the debt.

It is well settled that the personal estate of a decedent is the primary fund for the payment of debts, including those secured by bond and mortgage: Jones' Estate, 275 Pa. 143; but the debt here involved is not that of decedent alone. There is no obligation to pay the debt resting

on the husband, or the husband's estate, superior to that which rests on the wife.

In our opinion, the principle applicable here is analogous to the equitable doctrines of subrogation and marshaling of assets. Even if the estate paid the debt, it could not be subrogated to the rights of the mortgagee, because of the equal liability of husband and wife; however, much that has been said by the courts on these subjects has direct application.

"Where one creditor holds security upon two funds or estates, with perfect liberty to resort to either for the payment of his demand, and another creditor holds a junior security upon one only of these funds, equity will compel the former creditor to exhaust the fund upon which he alone has security, before coming upon the latter fund, and thereby depriving the latter creditor of his security": Sheldon on Subrogation (1st ed.), 67, sec. 61.

"The equitable doctrine of marshalling rests upon the principle that a creditor having two funds to satisfy his debt, may not by his application of them to his demand, defeat another creditor, who may resort to only one of the funds": Sowell v. Federal Reserve Bank of Dallas, Texas, 268 U. S. 449, 456.

"But if there is any rule or principle of equity plainly, positively and incontrovertibly established on the basis of reason and authority, it is that he who may at law control the application of two or more funds, shall not be suffered to use his legal advantages in a way to exclude the demand of a fellow creditor, whose legal recourse is but to one of them": Ramsey's Appeal, 2 Watts 228, 232.

"In the ordinary case of a creditor with right of recourse to two funds belonging to the same debtor, and another creditor, who can look to but one of these funds as the source of satisfaction, a chancellor will, of course, interfere for the protection of the several creditors, for here there is no risk of doing injustice to third persons. But the administration of this equity is, by no means, confined to these instances, as would seem to have been

at one time thought, and perhaps intimated in Kyner v. Kyner, 6 W. 225, and Harrisburg Bank v. German, 3 Barr, 303. Yet, when the funds or subjects of lien belong to different persons, the inquiry is whether the debt, which is a lien on both of them, or any part of it, ought, in justice, to be paid by one of them in relief of the other. If so, chancery will aid the interest of a creditor of the latter fund, against an appropriation of it in lieu of the fund primarily liable": Gearhart v. Jordan et al., 11 Pa. 325, 331.

"Where a claimant has liens upon two funds, with separate junior claimants for both funds, the balance remaining after the satisfaction of the senior claimant will be distributed in accordance with equitable principles, regardless of the fund which the senior claimant may have seized to satisfy his claim": McCahan's Estate, 312 Pa. 515, 526.

These principles are purely equitable, and will never be applied in any case where it would work an injustice to the creditor to restrict him to one fund only. There is nothing in this case, however, to indicate that the mortgaged premises are not entirely sufficient to pay the debt.

It is clear that the execution and delivery of the bond and mortgage created a personal liability which was not discharged by the husband's death. His interest in the mortgaged premises vanished, but his liability for the debt remained. But the obligee or mortgagee has a claim against two funds for the debt. These funds are: (1) The mortgaged premises which are now the property of the surviving wife, and (2) the assets of the deceased husband's estate. All other creditors, and likewise heirs, have a claim against the one fund only. Equity requires that the mortgagee look to the mortgaged premises in relief of other creditors and heirs.

On the death of a husband or wife, the primary fund for the payment of their joint indebtedness, secured by mortgage on property held by them as tenants by the

entirety, is the mortgaged property, insofar as the estate of the deceased spouse is concerned.

In the absence of a showing that the mortgaged property is insufficient to discharge the indebtedness, no part of the same is deductible from the value of the deceased spouse's estate in assessing the transfer inheritance tax.

*Decree*

And now, July 1, 1938, the appeal from the appraisement in the above estate and the assessment of the transfer inheritance tax is dismissed at appellant's cost.