## McIlvain *versus* The Mutual Assurance Company.

1. A mortgagee may release part or the whole of the mortgaged premises without inquiring whether a junior encumbrancer has intervened.   It is the duty of the latter, if he intends to claim an equity through the prior encumbrance, to give the holder notice, so that he may act with his own understandingly; and if he fails to do so, the consequences of his neglect must be visited on himself.

2. The possession of one lot of a piece of ground for the erection of a building, when the whole piece is covered by a prior mortgage, and the fact that a builder is actually at work constructing said building, are not notice to the holder of said mortgage that the builder has a lien and does not impose on the holder the duty of inquiry as to the existence of the lien, or give the builder an equitable right to insist upon a reduction of the mortgage debt proportionate to the value of another lot or lots released from the mortgage.

January 28th 1880.   Before SHARSWOOD, C. J., MERCUR, GORDON, TRUNKEY, and STERRETT, JJ.   PAXSON and GREEN, JJ., absent.

Error to the Court of Common Pleas, No. 3, of *Philadelphia county:* Of January Term 1878, No. 248.

Scire facias sur mortgage by the Mutual Assurance Company, assignee of the Pennsylvania Company for Insurance of Lives and Granting Annuities against John Power, owner, and John Palmer, terre-tenant.   The pleas were payment with leave, &c., and specially that the amount claimed was not a just proportion of what ought to be levied of the premises.   The replication to the first pleas was non solvit and issue, and to the special plea a common traverse.   J. G. McIlvain, assignee for the benefit of creditors of John A. Palmer, was subsequently substituted as defendant.

The mortgage upon which the scire facias issued, was given on the 15th of July 1874 by Power to the Pennsylvania Company, to secure the sum of $10,000, with interest, &c., upon premises southwest corner of Thirty-ninth and Locust streets, one hundred feet front on Thirty-ninth street, by one hundred and twenty feet in depth.

In the spring of 1875, the said Palmer entered into a written contract with Power, to erect a stone dwelling upon the lot thirty feet front on Thirty-ninth street by one hundred and twenty fee

in depth. Palmer made inquiry, and found the above-mentioned mortgage of $10,000 upon the lot in the name of the Pennsylvania Company, and was advised by his conveyancer that the mortgage covered the entire one hundred feet front on Thirty-ninth street, and that he was safe. On the 20th of May 1875, Palmer took possession of said thirty feet front on Thirty-ninth street and commenced work under his contract.

On or about the 10th of November 1875, the Mutual Assurance Company, plaintiffs, sent their representative to examine said premises, who went through the house, which was then in an unfinished condition, only having the rough coat of plaster on, and made his report to said company. The company then agreed to purchase said mortgage and release seventy feet front on said Thirty-ninth street, in two lots of thirty and forty feet respectively.

The plaintiffs, on the 9th of November 1875, under the above mentioned agreement, took an assignment of said mortgage from the Pennsylvania Company and recorded the same on the 12th of November 1875; and on the same day, released thirty feet front of said large lot by one hundred and twenty feet in depth from the lien of said mortgage.

Palmer, upon hearing that the Mutual Assurance Company had taken an assignment of said mortgage and released a portion of the mortgaged premises, notified the plaintiffs, in February 1876, of his position and requested them not to release. The fact that such notice was given was denied by the company.

On the 17th of April 1876, the company, plaintiffs, executed a second release for forty feet front of said lot by one hundred and twenty feet in depth, leaving but thirty feet front of said lot subject to the lien of said mortgage.

Palmer subsequently filed his lien for building said house as per contract, had the premises sold by the sheriff in July 1876, and for his own protection, purchased the property. On the 25th of November 1876, the plaintiffs brought this suit on the mortgage.

Among the points presented at the trial by the plaintiffs, were the following, all of which the court affirmed:—

2. That unless Palmer, before the plaintiffs released any portion of the mortgaged premises from the lien of their mortgage, gave them distinct notice of his lien as contractor for the erection of the house at the corner of Thirty-ninth and Locust streets, and cautioned them against such release, he has no defence to this action, and the plaintiffs are entitled to recover the full amount of the mortgage with arrears of interest and collection fee.

3. That there is no evidence that Palmer gave to the plaintiffs such notice, prior to their releasing the lot containing thirty feet front on Thirty-ninth street, sold to Walker. If the jury, in weighing the testimony, come to the conclusion that Palmer did, before the release to Power of the forty feet on Thirty-ninth street, dated April

22d 1876, give the plaintiffs notice of his lien and request them not to release, then, in that case, the defendant is entitled to a deduction from the full amount of the mortgage only of the proportionate amount which the said forty feet lot ought to bear of the whole amount of this mortgage ; in other words, the plaintiffs are entitled to recover the full amount of the mortgage debt with interest and collection fees, less the proportionate amount, which the said lot ought to bear.

4. That the occupation of the lot at the corner of Thirty-ninth and Locust streets by Palmer, as contractor for the erection of the building thereon, and his being employed in such erection, was not such notice as required by law, and the plaintiffs are entitled to recover the full amount of the mortgage with interest and collection fee, notwithstanding such occupation and employment. They did not impose on the plaintiffs the duty of inquiry as to the existence of a lien in favor of Palmer.

5. That there is no evidence that the plaintiffs, by their action, deprived Palmer of an opportunity to give them further notice than his possession and the erection of a building.

In the general charge, the court submitted a calculation made by the plaintiffs as to the proportionate amount due, if the jury should find that the plaintiffs had notice not to release the forty foot front lot. This calculation simply deducted the proportionate value to the whole lot of forty feet front on the same from the whole amount of the mortgage debt. And after submitting this calculation, the court charged : " If you find notice was given, you must find for plaintiffs the amount as per their calculation."

The verdict was for the amount as thus ascertained by this calculation, and after judgment thereon, the defendant took this writ and alleged that the court erred in affirming the plaintiff's points and in the foregoing portion of the charge.

*Samuel G. Dixon* and *Edwin S. Dixon,* for plaintiff in error. —Where a mortgagee, with notice of several successive alienations of parts of the mortgaged premises, releases that part primarily liable, he must deduct the value of the part released from the mortgage: Guion *v.* Knapp, 6 Paige Ch. 35 ; Hoy *v.* Bramhall, 19 N. J. Eq. 74, 563 : Deuster *v.* McCamus, 14 Wis. 307 ; Johnson *v.* Rice, 8 Me. 157.

If the mortgagee, with full notice of the equitable rights of the subsequent purchasers or encumbrancers as between themselves, releases a part of the mortgaged premises which in equity is primarily liable for the payment of his debt, he will not be permitted to enforce the lien of his mortgage against other portions of the premises without first deducting the value of that part of the premises which has been released by him : Thomas on Mortgages 135–6 ; citing Stuyvesant *v.* Hall, 2 Barb. Ch. 151 ; Guion *v.* Knapp, *supra,*

[McIlvain *v.* Mutual Assurance Co.]

Howard Ins. Co. *v.* Halsey, 4 Sand. 565; affirmed by Sup. Ct., 8 N. Y. 271; Stevens *v.* Cooper, 1 Johns. Ch. 425; Gibson *v.* McCormick, 10 Gill & Johns. 65; Morris *v.* Griffith, 1 Yeates 192; Act of April 2d 1822, 7 Sm. Laws 551; Taylor's Executors *v.* Maris, 5 Rawle 56; Mevey's Appeal, 4 Barr 80. The plaintiffs were chargeable with notice, for they examined the building in the course of erection. They could not, therefore, do any act in derogation of the builder's rights. They had no authority to release any part of the lot on which the building was being constructed: Thomas on Mortgages 138; Trustees of Union College *v.* Wheeler, 61 N. Y. 88; Sailor *v.* Hertzog, 4 Whart. 266; McCulloch *v.* Cowher, 5 W. & S. 427; Brightly's Equity Jurisdiction 115.

Upon principle and authority the company can only recover the proportion of the said $10,000 mortgage with interest, which the thirty feet front bore to the entire lot or three-tenths of $10,000, with interest and proper allowance for the extra value of the corner lot.

*Peter McCall,* for defendant in error.—It was the duty of the defendant, if he meant to gain an equity, to notify the plaintiffs distinctly of his position, and caution them not to do an act by which his security would be diminished. Distinct notice and caution against releasing are required: Taylor's Exr's. *v.* Maris, *supra;* Cheesebrough *v.* Millard, 1 Johns. Ch. 414; James *v.* Brown, 11 Mich. 25.

The occupation was not under any apparent claim of ownership. It was simply the possession of a builder in the erection of a building and imposed no duty of inquiry on the holder of the mortgage: Ward *v.* Hague, 25 N. J. Eq. 397.

The calculation submitted to the jury was correct. It was based upon the principle established by the cases that where the mortgagee, with full notice of the equitable rights of the subsequent encumbrancer, releases a part of the mortgaged premises, and thus deprives the subsequent encumbrancer of his right of contribution from the part released, he cannot recover the whole amount of the mortgage debt, but must deduct the contributory share of it which the junior encumbrancer might have recovered if substituted in the place of the mortgagee, had the release not been given.

Mr. Justice STERRETT delivered the opinion of the court, March 1st 1880.

Palmer, the assignor of the plaintiff in error, with actual as well as constructive notice of the mortgage previously given by Power to the Pennsylvania Company, contracted to erect a building on one of the mortgaged lots, and proceeded immediately to fulfil his contract. When the building was up and in process of completion, the mortgage was assigned to the defendant in error, who three days thereafter recorded the assignment, and released from the

12 NORRIS—3

[McIlvain  *v.* Mutual Assurance Co.]

lien of the mortgage a lot thirty feet front, adjoining the one on which the new building was erected.   This was done without any notice or knowledge of Palmer's contract or lien thereunder other than what might be inferred from a knowledge of the fact that the work of completing the building was then progressing.   It was alleged by Palmer that about three months thereafter on being informed of the release, he gave notice of his lien on the corner lot, and warned the Mutual Assurance Co. not to release any part of the premises.   This was denied by the company, but the verdict establishes the fact that the notice was given.   Afterwards, in April 1876, the company released another lot, forty feet front, adjoining the one first released.   Palmer completed the building, filed his lien, and under proceedings thereon purchased the property at sheriff's sale, and as terre-tenant defended against the scire facias in this case.

The principal question is, whether the occupation of the lot by Palmer as contractor for erection of the building, coupled with the fact that he was actually at work completing the same when the mortgage was assigned and the first lot released, was such notice to the company of his lien as gave him an equitable right to insist on a reduction of the mortgage-debt proportionate to the value of the lot so released.   The court held that these facts were not notice, and did not impose on the company the duty of inquiring as to the existence of a lien in favor of the contractor. In this there was no error.   While such facts would be sufficient to put a purchaser on inquiry, they impose no such duty on a mortgagee.   The maxim *caveat emptor* applies to the former, but not to the latter.   The purchaser must satisfy himself that the vendor is seised in his own right of the interest he proposes to convey, for while the legal title may be in him, there may be an equity in another affecting it in his hands.   Actual knowledge of its existence is not necessary to charge a purchaser with an outstanding equity.   It is enough if he is cognisant of such facts and circumstances, indicating an equity in another, as would prompt a prudent man to inquiry ; and if inquiry thus becomes a duty and its performance be neglected, he is properly held to have known such facts as it would have brought to light.   But the owner of a mortgage or other real estate security, in assigning or releasing the same, is dealing with his own property, and has a right to do as he pleases, provided he does not violate the maxim, *sic utere tuo ut alieno non lœdas.*   A mortgagee, for example, may at the request of the mortgagor release part or the whole of the mortgaged premises without inquiring whether a junior encumbrance has intervened.   It is the duty of the latter, if he intends to claim an equity through the prior encumbrance, to give the holder notice, so that he may act with his own understandingly ; and if he fails to do so the consequences of his neglect must be visited on

[McIlvaine v. Mutual Assurance Co.]

himself.   While the law makes it the duty of every man to so deal with his own as not to injure another unnecessarily, it imposes on the latter a greater obligation to take care of his own property than it does on a stranger to take care of it for him.   To hold otherwise, would compel the senior encumbrancer to do for the holder of the junior security what in equity and good conscience he ought to do for himself.   The doctrine is one of equity jurisprudence, and not of positive law, and hence to affect the conscience of the former he should have actual and not merely constructive notice of the equity claimed by the latter: Taylor's Exr's v. Maris, 5 Rawle 51 ; James v. Brown et al., 11 Mich. Rep. 25 ; Ward's Exr's v. Hague, 25 N. J. Eq. 379 ; and Cheesebrough v. Millard, 1 Johns. Ch. 409.   The case first cited decides that the owner of a judgment-lien on lands, a portion of which is covered by a subsequent mortgage, does not, by releasing part of the land, impair his right to be paid out of the remainder, including the portion embraced in the mortgage, unless, prior to the release, the mortgagee has distinctly notified him of his mortgage, and cautioned him against doing any act by which his security might be impaired ; and that the record of the mortgage is not such notice.   In that case, Mr. Justice SERGEANT said : "It was the duty of the defendant, if she meant to gain an equity, to notify the plaintiff distinctly of her position, and caution him not to do an act by which her security might be diminished." The same general doctrine is ably maintained in Ward v. Hague, supra, in which it was held that the mere fact of the building being in progress, and so known to the holder of a prior mortgage when he released part of the premises, was insufficient to entitle the holder of a building-lien to demand a reduction of the mortgage security.   The chancellor, in his opinion said : "Whether the lien claimant in such a case as this would be entitled to the equity here set up must depend on something more than the mere fact that when the release was made the building was in progress and the releasing creditor knew it."   The ground of the equity referred to is so familiar that it is unnecessary to do more than refer to the cases above cited.

It is contended that the company, by releasing the lot contemporaneously with the recording of the assignment, deprived Palmer of the opportunity of giving any other notice than that afforded by the occupancy and unfinished condition of the building.   In the absence of actual notice the mortgagee was not bound, as we have seen, to wait and inquire whether there was a junior lien that might be prejudiced by the release.   When Palmer contracted to put up the building he had actual as well as constructive notice of the mortgage, and if he intended to affect the mortgagee with an equity in favor of himself it was his duty to notify him not to

[McIlvaine *v.* Mutual Assurance Co.]

release.   If he had done so the equity thus asserted might perhaps have followed the mortgage in the hands of the assignee.

But, while Palmer acquired no equity by reason of the release of the first lot, the jury has found that it was otherwise as to the second lot; that the assignee of the mortgage had notice of his lien on the corner lot, and was warned not to release to his prejudice.   It is contended, in view of the facts so found, that the mortgage-debt should be reduced in the proportion of the value of the forty feet front released to that of the seventy feet then bound by the mortgage, and not to that of the one hundred feet front originally bound thereby; and that an erroneous basis of calculation was sanctioned by the court.

The first lot, as we have seen, was released without previous notice of Palmer's lien.   This left the remaining seventy feet front bound by the mortgage, and thus the matter stood when notice not to release was given by him.   So far as the mortgage security was then concerned it was precisely the same, in effect, as if it had been originally taken on the seventy instead of one hundred feet front.   The assignee of the mortgage, in disregard of the notice, released forty feet or four-sevenths of the land covered by the mortgage.   Assuming the land to be of uniform value per foot front, Palmer acquired an equity to claim a reduction of four-sevenths instead of four-tenths of the mortgage-debt.

There appears to be no error except in the basis of calculation submitted to the jury, and the fifth assignment alone is sustained.

Judgment reversed and a *venire facias de novo* awarded.