## Schrack *versus* Shriner et al.

| 100 | 451 |
| 164 | 476 |
| 100 | 451 |
| 214 | 498 |

1. The equitable effect of the sale of an undivided one-half of mortgaged premises, by the mortgagor, and payment of the purchase-money to him, is to cast the burden of the payment of the mortgage debt primarily on the remaining half, when that is sufficient to pay the incumbrance.

2. After such sale, the mere execution by the mortgagee of a release of the remaining half from the mortgage debt, would not of itself discharge the first half from the lien of the mortgage.

3. But if the release be so made by the mortgagee with full knowledge of the previous sale, the payment of the purchase-money, and of the fact that the vendee relied upon the transfer of the lien of the mortgage to the unsold portion, it will discharge the entire mortgage premises from the lien.

4. Upon the sale of a moiety of the mortgaged premises, the vendee took possession, informed the mortgagee of the conveyance and of his desire to have the mortgage debt paid out of the moiety remaining in the hands of the mortgagor, affirming that it was sufficient security for the entire debt, to which fact the mortgagee assented. In a suit upon the mortgage by the mortgagee,—*Held*, that a subsequent release by him of the remaining moiety, for consideration, discharged the entire premises from the lien of the mortgage.

May 2nd 1882.    Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

ERROR to the Court of Common Pleas of *Union county :* Of July Term 1882, No. 27.

Scire facias sur mortgage, by Samuel Schrack against Charles H. Shriner, mortgagor, with notice to William Swenk and R. V. B. Lincoln, as terre tenants. Pleas, payment, and a special plea of release and discharge of the lien of said mortgage, as to any of the mortgaged premises in possession of either of the terre tenants or their assigns. On the trial, before BUCHER, P. J., the following facts appeared :—On March 10th 1868 Shriner gave his bond to Schrack for $6,000, conditioned for the payment of $3,000, accompanied by a mortgage for the same amount, on certain mill property in Union county, payable in annual installments of $500, commencing July 15th 1868, being security for part of the purchase money for said mill which had been sold by Schrack to Shriner in 1867 for $9,000. On December 31st 1868 Shriner, the mortgagor, conveyed an undivided moiety of the mortgaged premises to one Swenk for $6,500. Swenk shortly afterward took possession and notified Schrack of the conveyance, stating that the undivided half remaining in Schriner's hands, was sufficient security for the mortgage debt, which fact was admitted by Schrack.

On June 10th 1873 Schriner conveyed his remaining half of

the mortgaged premises to Lincoln and Smith for the consideration of $6,500; and on September 13th 1868 Lincoln and Smith to protect themselves in their purchase from Shriner paid Schrack $1,594.16 in consideration of which Schrack, by a memorandum indorsed on the mortgage, released the undivided moiety of the mortgaged premises held by Lincoln and Smith, from the lien of the mortgage.

In 1874 Smith conveyed his interest in the mortgaged premises to Lincoln, and two years afterward Lincoln purchased from Swenk his interest in the property, thus becoming sole owner. When Lincoln purchased Swenk's interest, April 1st 1876, he ascertained from Schrack, that the amount still due him on the mortgage was $1684.51. This Lincoln indorsed on the bond, as the balance then due, and retained the amount from the $6,500, purchase money, which he had agreed to pay Swenk. He afterward paid Schrack the interest thereon for the years up to April 1878.

In 1880 Schrack issued a sci. fa. on the mortgage as above for the balance of $1684. 51 with interest from April 1st 1878.

The plaintiff submitted the following points.

(1) If the jury believe that at the time of the release by Samuel Schrack to Lincoln and Smith, on September 13th 1873, of the lien of his mortgage upon their undivided half, he had no knowledge of the payment by Swenk of the purchase money for his undivided half, and he never had any intimation or caution from Swenk that the release by him of the other undivided half would prejudice his rights, but that, on the contrary, Swenk always conceded in his interviews with Schrack that his undivided half was still liable to its proportion of the lien of the mortgage, then there would be no such equity in Swenk, or in his grantee Lincoln, the terre tenant, as would discharge the said undivided half from the lien of the balance unpaid on the mortgage.

Answer.—We affirm the point if you find the facts as stated in it; but you will bear in mind, that Swenk swears that he notified the plaintiff that he had bought the property bound by the mortgage from Shriner, and paid him the purchase money, before the date of the release from plaintiff to Lincoln and Smith. If this is so, plaintiff cannot recover; otherwise, he can, as we have told you in the general charge, to which we refer for further answer. (Second assignment of error.)

(2) If the jury believes that, at the time of the delivery by Swenk of the deed to Lincoln on April 1, 1876, the said Lincoln ascertained, by his own calculation, the balance still due upon the mortgage; . . . . that for years after so delivering the deed Swenk never demanded from Lincoln any portion of the amount so retained, but that Lincoln paid the interest thereon to

[Schrack v. Shriner.]

Schrack for two years, to wit, on May 4, 1877, and March 20, 1878, then the said Swenk could never recover from the said Lincoln the amount of $1684.51, so retained by him, in the event of his paying it to Schrack. And there is no such equity in Lincoln as will relieve the land held by him by purchase from Swenk, from the lien of the balance due on the mortgage.

Answer.—We refuse the point as put, because the evidence of Lincoln and Swenk is clear, if believed, that Swenk never agreed that Lincoln should pay the purchase money $1,684.51 to Schrack and not to him, but on the contrary the evidence is that Lincoln refused to pay this money to Swenk, because of the lien, when he wanted it, but that Swenk reluctantly agreed that Lincoln should retain the money until it was decided to whom it belonged. The fact that Lincoln computed the amount due on the bond and indorsed it thereon, and afterwards paid the interest for two years to Schrack in the absence of Swenk and without his consent, could not defeat his equity. The mere fact that Swenk did not demand this money from Lincoln for several years could not defeat his equity in the absence of an agreement between Lincoln and Swenk that Lincoln should pay Schrack. (Third assignment of error.)

(3.) The equity, if any, of Swenk to have his undivided half relieved of the lien of the mortgage by reason of the release to Lincoln and Smith, was personal to Swenk and only in connection with the land; and upon the conveyance of the land to Lincoln absolutely in fee simple, without any incumbrances or reservation of equities, his equity, if any ever existed, was gone. Swenk could have no subsequent claim upon Lincoln. The balance of $1,684.51 due on the mortgage, retained by Lincoln out of the purchase money due Swenk, was left in his hands to pay off Schrack the balance due on his mortgage, which continued to exist as a valid subsisting lien on the undivided half sold by Swenk, unless he, prior to his conveyance, claimed his equity.

Answer.—We refuse this point. The delivery of the deed by Swenk to Lincoln, did not destroy his right to recover the unpaid purchase money from Lincoln. This is especially so because the evidence of Lincoln and Swenk, both, is that Lincoln was to retain this money until it was decided who was entitled to receive it. (Fourth assignment of error.)

(4.) Lincoln, the terre tenant, having taken the undivided half from Swenk subject to half the mortgage, with a full knowledge of the previous release and subsequent recognitions of the existence of the debt as a lien, and all the attendant circumstances, is estopped in equity from denying the liability of the last half of the land sold to the incumbrance of one-half

the mortgage.    Answer—Refused.    (Fifth assignment of error.)

The court further charged the jury, inter alia, as follows: ["Did the plaintiff have this knowledge (that is, that Swenk had purchased the undivided half of Shriner and claimed to have paid him all the purchase money), before he executed the release?    This is the only question of fact in the case that is disputed, as we understand the case, and as you find this fact to be, so must be your verdict. . . . . . If, then, you believe Swenk, you should find for the defendant, Lincoln, terre tenant.    If you disbelieve him, and believe the plaintiff had no notice of the purchase and payment of Swenk to Shriner until he executed the release, then you should find for the plaintiff the amount of his claim."]    (First assignment of error.)

Verdict and judgment for defendants (terre tenants), whereupon Schrack took this writ, assigning for error the answers to his points, and that portion of the charge above quoted.

*Wolfe* (with whom were *Leiser* and *Wilson*), for plaintiff in error.—The release given by Schrack to Lincoln and Smith, did not ipso facto discharge the lien of the mortgage upon the other half of the land ; nor did it give a right or equity to such discharge, without distinct notice of intervening equities which would be prejudiced by such release.    The better opinion is that the notice should be so far actual as to justify the inference that the incumbrancer acted with a willful disregard of the purchaser's equity: White & Tudor's L. C. vol. II. part I. p. 309.    No such notice was shown by the evidence.    It was never contemplated that Schrack was not to be paid.    Lincoln told Swenk that there was $1,684.51 "due on the Shriner mortgage to Schrack."    He calculated the amount, indorsed it on the bond, and paid the interest thereon for two years ; thus expressly recognizing the mortgage debt.    The whole testimony shows that the parties had no idea the first lot was released, and they acted in every way as if the mortgage were a subsisting lien thereon.

*Alfred Hayes* (with him *Horace P. Glover*), for defendants in error.—When a conveyance is made of part of a tract of land, the whole of which is subject to a lien, as of a mortgage, the remaining part is primarily liable for the debt ; and if the mortgagee release said remainder the whole lien is lost ; provided he had notice of the other parties' equities: Lowry *v.* McKinney, 18 P. F. S. 294 ; Martin's Appeal, 1 Out. 85 ; Paxton *v.* Harrier, 11 Pa. St. 312.    The jury by their verdict found that Schrack released the undivided half last sold with full knowledge that

Swenk had purchased the first half from Shriner and paid the purchase money, before the release was executed. The first half, thus released, was conveyed by Swenk to Lincoln, free from incumbrance, but Lincoln, not wishing to take any risk, withheld the $1,684.51, until the law should decide to whom it belonged. The lien of the mortgage was discharged as to the lot owned by Swenk, as soon as the release of the other half was given, and could not again take effect by the conveyance from Swenk to Lincoln, and thus deprive Swenk of his equity.

Mr. Justice STERRETT delivered the opinion of the Court November 20th 1882.

The mortgage on which the scire facias issued was given in March 1868, by C. H. Shriner to Samuel Schrack, the plaintiff, to secure $3,000 purchase money, payable in annual instalments of $500 each with interest. In December of that year Shriner, the mortgagor, conveyed an undivided moiety of the premises to Swenk, and in 1873 he conveyed the other moiety to Lincoln and Smith. In 1874 Smith conveyed his interest in the last mentioned moiety to Lincoln, and two years thereafter Lincoln purchased the other undivided moiety from Swenk, and thus he became sole owner of the mortgaged premises.

In September 1873 Lincoln and Smith paid plaintiff $1,594.16, in consideration of which he released from the mortgage lien the undivided moiety which they a few months before had purchased from Shriner. When Lincoln purchased the first mentioned moiety from Swenk, April 1st 1876, he made inquiry as to how much of the mortgage debt was unpaid, and having ascertained from plaintiff that it was $1,684.51, he indorsed that sum on the bond as the balance then due, and retained that amount out of the consideration money he had agreed to pay Swenk. He afterward paid plaintiff the interest thereon for two years in succession. The scire facias issued against Shriner, the mortgagor, with notice to Swenk and Lincoln as terre tenants, for the balance above mentioned with interest from April 1st 1878. It is not pretended that any part of it was ever paid. The defence, as fully disclosed in the special pleas of the terre tenants, is that by releasing the last moiety conveyed by the mortgagor, with notice of his first vendee's equity, etc., the undivided half first conveyed, and owned successively by Swenk and Lincoln, was released from the lien of the mortgage.

The equitable effect of the first sale made by the mortgagor, and payment of the purchase money to him, was to cast the burden of paying the mortgage debt, primarily, on the remaining moiety of the mortgaged premises, which, as is conceded, was at all times amply sufficient to pay the incumbrance. In equity the moiety remaining in the hands of Shriner primarily owed

[Schrack *v.* Shriner.]

the mortgage. It was, so to speak, the principal debtor, while the other moiety occupied merely the relation of surety. The contention of the terre tenant is that by releasing the former, after being notified by the purchaser thereof, the plaintiff precluded himself from enforcing the lien against the latter.

The mere execution of the release by the plaintiff, without more, would not have the effect of discharging the lien of his mortgage from the residue of the land. As is said in McIlvane *v.* Mutual Assurance Co., 12 Norris 30, the owner of a mortgage or other real estate security, in assigning or releasing the same, is dealing with his own property and has a right to do as he pleases, provided he does not violate the maxim, sic utere tuo ut alieno non lædas. A mortgagee, for example, may release part or the whole of the mortgaged premises without inquiring whether a junior incumbrancer or vendee has intervened. It is the duty of the latter, if he intends to claim an equity through the prior incumbrance, to give the holder notice so that he may act with his own understandingly; and, if he fails to do so, the consequences of his neglect must be visited on himself. While the law makes it the duty of every man to so deal with his own as not to injure another unnecessarily, it imposes on the latter a greater obligation to take care of his own property than it does on a stranger to take care of it for him. To hold otherwise would compel the senior incumbrancer to do for the holder of the junior security, or a subsequent vendee, what in equity and good conscience he ought to do for himself. The doctrine is one of equity jurisprudence and not of positive law, and hence to affect the conscience of the former he should have actual and not merely constructive notice of the equity claimed by the latter.

There was some conflict of testimony as to the character of the notice given by Swenk to the plaintiff, and whether it was given before or after the release. That, however, was a question for the jury, and it appears to have been fairly submitted to them. The testimony of the defendants tended to prove such notice to the plaintiff as should have stayed his hand from releasing. Swenk testified, among other things, that shortly after he had purchased and paid for the first undivided half, and before the release was executed, he saw the plaintiff and notified him of these facts, and at the same time told him that Shriner's remaining half of the land was good for the mortgage debt; and the plaintiff thereupon admitted that it was. The only inference the plaintiff could reasonably draw from this was that Swenk expected him to look to that moiety of the land for the payment of his lien. While the plaintiff, in his testimony, did not deny the fact of notice, he was inclined to think it was given after and not before the release, but he could not speak posi-

[Schrack *v.* Shriner.]

tively.  The learned judge, referring to the testimony as to when the notice was given, charged the jury that time, in that regard, was material.   " If the plaintiff had no notice until he had executed the release, he would not be prejudiced by it, but if he was warned and had notice before, he released at his peril, and absolved the land from the payment of the mortgage." Speaking of the duty of a senior incumbrancer, he said in another part of his charge : " He is not bound to search the record downward in order to ascertain whether there are junior incumbrancers or vendees of the debtor that may be injuriously affected by the release of a portion of his lien.  But he dare not release when he has notice or warning that the rights of others may be impaired by his so doing."

Considering the charge as a whole and with reference to the facts of the case, as the jury were justified in finding them from the testimony, it is a fair and adequate presentation of the law as recognized in several of our cases : Nailer *v.* Stanley, 10 S. & R. 450 ; Taylor's Ex'rs *v.* Maris, 5 Rawle 51 ; Paxton *v.* Harrier, 1 Jones 312 ; Carpenter *v.* Koons, 8 Harris 222 ; Lowry *v.* McKinney, 18 P. F. Smith 294, and Amanda Martin's Appeal, 1 Out. 85.  In Taylor's Exec'rs. *v.* Maris, supra, Mr. Justice SERGEANT says the effect of a release by the mortgagee must depend on the circumstances of the case.  If he " has notice that by such an act he sacrifices the interest of a subsequent lien creditor, he will be bound to withhold his hand ; or, if he proceeds, will be responsible for the loss incurred.  He may have this knowledge in the very creation of the mortgage.  As if two or more severally seised of land join in a mortgage, they are all in æquali jure entitled to contribution amongst themselves ; and if the mortgagee should release the land of one from the mortgage, leaving the whole sum to be levied of the remaining lands, he would be doing an act of injustice of which he was fully cognizant.  So, when the mortgage was originally by one, and a purchaser of part from the mortgagor intervenes, and before releasing that fact is known to the mortgagee."

That portion of the charge complained of in the first specification, and the answer to plaintiff's first point should be considered in connection with the general charge.  Indeed, the learned judge refers to it specifically for further answer to plaintiff's first point.  When thus viewed, there can be no serious objection to either.

There is no error in the answer to plaintiff's second point. The fact that Lincoln computed the amount due on the bond, and indorsed it thereon, and afterward paid the interest to plaintiff, in the absence of Swenk, and, so far as appears, without his consent, cannot defeat his equity ; nor can the further fact, that Swenk did not demand the residue of the purchase

money from Lincoln for several years, have any such effect. If there had been an agreement between Lincoln and Swenk that the former should pay Schrack, it might have been otherwise; but there is no evidence from which the jury would have been justified in finding any such agreement.

The equity of Swenk to have his undivided moiety relieved from the lien of the mortgage until the other half was first exhausted, was not personal to himself alone. There is nothing in the circumstances of the case to prevent his vendee from asserting that equity. If the lien of the mortgage was discharged, by reason of the release, before Lincoln purchased, it could not re-attach afterwards. The fourth assignment is not sustained.

The plaintiff's fourth point was also rightly refused.

Judgment affirmed.

SHARSWOOD, C. J., dissented.