# Milligan's Appeal.

1. It is settled law that where mortgaged land is sold or mortgaged in pieces and at different times, the several pieces are liable for the mortgage debt in the inverse order of their alienation.

2. A second mortgage is a sale within this rule.

3. At law a judgment is discharged by actual payment, but in equity it may still subsist when justice requires it; and in such cases actual assignment of the judgment to the party equitably entitled is not essential.

4. A. mortgaged a tract of land to B., and divided the same into three lots. The first he mortgaged to C., the second he mortgaged to D., the third he conveyed to E. B. entered judgment on the bond accompanying his mortgage, and D. became the purchaser at sheriff's sale of the lot mortgaged to him. A. became a bankrupt, and the lot mortgaged to C. was sold by his assignees in bankruptcy, free of all liens, for a sum sufficient to pay the mortgage of B., to whom the fund was awarded. C. filed a bill against B., D. and E., claiming to be subrogated to the rights of B. as against D. and E., and to realize his claim by a sale of their lots in the inverse order of their alienation. On demurrer to the bill. *Held:*

(1) That when C. took his mortgage, he had an equity to compel A.

to pay the paramount mortgage to B. out of the remaining portions of the property covered by it; and as C.'s security, by no act of his own or of B., had been taken to pay the common incumbrance, he had a right to be relieved as against D. and E. in the inverse order of the conveyances to them, and that, being subrogated herein to B.'s rights, he should be entitled to the lien of the paramount judgment for this purpose, although the same had been paid by process of law.

(2) That this was a case of subrogation and not of contribution.

(3) That D. did not change his position by becoming the purchaser at a judicial sale under his own mortgage.

5. The Act of April 23d 1856 § 9 (P. L. 534), "for the greater certainty of title and more secure enjoyment of real estate," provides in cases where the real estate of several persons is subj et to the lien of a judgment to which they should contribute, or to which one should be subrogated as against the others, that the person having such right of contribution or subrogation may, upon suggestion thereof, obtain a rule on the plaintiff to show cause why he should not levy on and make sale of the real estate so liable in the proportion or in the succession in which the properties of the several owners shall be respectively liable, &c. *Held*:

(1) That this Act did not give the right of substitution, but merely provides a mode of enforcing it in certain cases, as, for example, where the plaintiff in a judgment which binds several properties is about to collect it and there are equities to be adjusted between the terre-tenants.

(2) The Act does not provide an exclusive remedy when the land has been sold and the judgment paid without the issuing of execution upon that judgment.

Quere, whether the Act applies at all to such cases.

Carpenter *v.* Koons, 8 Harris 222, distinguished.

November 3d 1883. Before MERCUR, C. J., GORDON, PAXSON, STERRETT, GREEN and CLARK. JJ. TRUNKEY, J., absent.

APPEAL from the court of Common Pleas No. 2, of *Allegheny county :* Of October Term 1883, No. 164.

Appeal by John N. Milligan and Mary E., his wife, George A. Chalfant and Margaret J,. his wife, and Robert E. Stewart from a decree of the Court of Common Pleas No. 2, of Allegheny county, overruling a demurrer to a bill in equity filed against them by William A. Shaw.

The bill set forth the following facts : On September 28th 1870, the defendants, Chalfant and wife, conveyed to John A. Carothers a tract of land in Wilkins township, Allegheny county, containing some fourteen acres, and Carothers executed and delivered to Mrs. Chalfant his purchase money mortgage of the premises for $14,040, which mortgage was duly recorded. Carothers laid out thirty building lots upon this land, numbered from 1 to 30 inclusive, on a plan thereof duly recorded. These lots he conveyed from time to time, and by May 20th 1872, had sold and conveyed lots Nos. 4, 6, 9, 10, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23 and 25, from all of which the lien of the Chalfant

mortgage had been released. On April 22d 1872, Carothers mortgaged lots 1, 2 and 3 to William A. Shaw, the plaintiff, to secure a loan of $3,000, which with interest due on July 25th 1882, the date of filing the bill, remained unpaid. On November 2d 1873, Carothers mortgaged lots Nos. 5, 19, 24, 28, 29 and 30, to Robert E. Stewart (a defendant), to secure a loan of $8,120. Both of these mortgages were duly recorded. Stewart obtained judgment upon his mortgage, issued execution, and having purchased at sheriff's sale the six lots constituting the mortgaged premises, took title thereto on March 30th 1875 and went into possession thereof under his sheriff's deed. On June 22d 1874, Mrs. Chalfant obtained judgment on the bond accompanying her mortgage. On October 3d 1874, Carothers conveyed to Milligan, one of the defendants, lots Nos. 7, 8, 11, 12, 26 and 27, and by mesne conveyances the title thereto became vested in Mary E. Milligan, also a defendant. In March 1875, Carothers was adjudged a bankrupt by proceedings duly had in the United States District Court for the Western District of Pennsylvania, and his assignee in bankruptcy under an order of court sold at public sale free and clear of all liens, lots Nos. 1, 2 and 3, for $7,700, and the register in bankruptcy awarded the fund to the payment of Mrs. Chalfant's mortgage, to the exclusion of the plaintiff, whose exceptions to the register's report were overruled by the District Court. The sum so received by Mrs. Chalfant, together with sundry amounts formerly paid her, amounted to a payment in full of the mortgage debt and all interest thereon due, and Shaw then filed this bill, claiming that he was entitled to subrogation to the Chalfant mortgage to the extent of his claim, $3,000, with interest, &c., as against the lots owned by Stewart and Milligan, as above stated.

The bill prayed : (†) For an injunction against Mr. and Mrs. Chalfant to restrain them from satisfying upon the record thereof the mortgage given to Mrs. Chalfant by John A. Carothers. (2) That the said Chalfant and wife may be decreed to assign to the plaintiff the said mortgage and the money secured thereby, to the extent of $3,000 and interest, and that upon said assignment being made the plaintiff may have the right and power to sue out a writ of scire facias on said mortgage against the property in the hands of the said Stewart and Milligan, or any persons alienees of the said Stewart and Milligan. (3) That upon assignment to the plaintiff by George A. Chalfant and wife of their mortgage, the same may be decreed to be a first lien in favor of the plaintiff upon lots held by Stewart and Milligan or their alienees.

To this bill the defendants demurred ; and the court, after argument, overruled the demurrer in an opinion by EWING, P. J., and decreed that the plaintiff, Shaw, be subrogated to the

original rights of Chalfant and wife, holding that the Chalfant mortgage should be assigned to him to the extent of $3,000, with interest due thereon ; that the plaintiff had a first lien to the same extent upon the said several lots conveyed to the defendants, Stewart and Milligan respectively ; and that unless said lien was satisfied within thirty days, Shaw should have execution thereof by fi. fa. against their said lots of ground ; with the restriction that if plaintiff should have recourse to execution and sale of the lots he should do so in the inverse order of their alienation.

Defendants thereupon took this appeal, assigning for error the action of the court in overruling their demurrer and in entering the above decree.

*Dalzell* (with whom was *Hampton*), for appellants.—Treating Shaw and Stewart as purchasers, it is apparent that they took expressly subject to the incumbrance and that it formed a part of the purchase money. This is clear as to Stewart, and not less clear, it would seem, as to Shaw. He can be in no better position than if he had purchased at a foreclosure sale on his mortgage. But the rule that purchasers are liable to contribute in the inverse order of their purchases to the discharge of a paramount incumbrance, is not applicable where they take expressly subject to the incumbrance and it forms part of the purchase money : Carpenter *v*. Koons, 8 Harris 222. In that case it was held, in accordance with this principle, that the rule did not apply to the case of sheriff's sales of mortgaged premises since the Act of April 6th 1830, which preserved the lien of the mortgage. It thus appears that the rule which throws the mortgage on the second purchaser in relief of the first, is founded on the equity which the first *d*he has against the mortgagor to compel him to pay the mortgage ; and is applicable only where the first purchaser pays the clear value of the property, and not where he buys subject to the incumbrance, and consequently pays so much less than the clear value : Beddow *v*. Dewitt, 7 Wright 330 ; Lord Eldon, in Waring *v*. Ward, 7 Ves. 337. But granting that some right of contribution or of subrogation existed as between the plaintiff and the defendants, still under the facts presented, the decree was erroneous, as the Act of April 22d 1856 (P. L. 534) applies and its provisions should have been followed. The Act provides : § 9. "That whensoever the real estate of several persons shall be subject to the lien of any judgment to which they should by law or equity contribute, or to which one should have subrogation against another or others, it shall be lawful for any one having right to have contribution or subrogation, in case of payment, upon suggestion by affidavit and proof of the facts necessary to establish

[Milligan's Appeal.]

such right, to obtain a rule on the plaintiff to show cause why he should not levy upon and make sale of the real estate liable to execution for the payment of said judgment, in the proportion or in the succession in which the properties of the several owners shall in law or equity be liable to contribute towards the discharge of the common incumbrance, otherwise upon the payment of such judgment to assign the same for such uses as the court may direct; and the court shall have power to direct to what uses the said judgment shall be assigned, and when assigned, direct all executions thereupon, so as to subserve the rights and equities of all parties whose real estate shall be liable thereto; and if the plaintiff shall refuse to accept his debt and make such assignment of his judgment, the executions thereupon in the hands of the plaintiff shall be so controlled and directed by the court as to subserve said rights and equities."

It has been held that this Act entirely superseded any other procedure formerly applicable: Arna's Appeal, 15 P. F. Smith 73; Phelps's Appeal, 2 Out. 549. On June 22d 1874, the paramount incumbrance, the Chalfant mortgage, was merged in judgment. Then under the Act of 1856, " the real estate of several persons" (i. e., Carothers, Shaw and Stewart) "was subject to the lien of a judgment to which they should by law or equity contribute," and Milligan's purchase in October 1874 came within the same category. Shaw had then the right " upon suggestion by affidavit, &c. to obtain a rule on the plaintiff to show cause why she should not levy on and make sale of the real estate liable to execution," &c., or on her refusal to pay her judgment and have it assigned to his use. And under Phelps's Appeal, supra, this was the only way for Shaw to avail himself of his right.

*W. S. Purviance*, for the appellee.—The principle here involved is one of subrogation and not of contribution. Shaw's rights were that the remaining lots covered by the Chalfant mortgage, and which subsequently became the property of Stewart and Milligan, should go to the payment of the Chalfant mortgage before his own should be touched, and the liability of his lots for the payment of any portion of the Chalfant mortgage depended solely on whether the Stewart and Milligan lots would have realized enough to pay off the Chalfant mortgage: Martin's Appeal, 1 Out. 85; Mevey's Appeal, 4 Barr 80. The cases of Carpenter v. Koons, 8 Harris 222, and Beddow v. De Witt, 7 Wright 330, are relied on to show that Shaw, Stewart and Milligan were all purchasers from Carothers, subject to the Chalfant mortgage, and that, therefore, the Chalfant mortgage of $8,000 formed a part of the purchase money in each case; the doctrine of contribution, and

not subrogation applying; and that as between these three pieces of Shaw, Stewart and Milligan, the mortgage debt due Mrs. Chalfant should be paid in the proportion of their respective values. These were cases of a sheriff's sale of property subject to a mortgage, and as BLACK, C. J., said in Carpenter *v.* Koons, neither of the purchasers had done or suffered anything which entitled him to a preference over the other. The Act is what may be termed a practice Act, regulating the practice to be pursued by terre-tenants in a certain stage of a case, to wit: while the case was in the shape of a judgment or lien, and before a completed and fully executed execution. At any time before the execution was completed by an actual sale, a terre-tenant, entitled to subrogation, might avail himself of this Act, and all that Arna's Appeal and Phelps's Appeal in this respect decide, is that where a terre-tenant desires to avail himself of his right to subrogation before a sale, he must strictly follow the provisions of the Act of 1856. In this case the proper mode of procedure was by petition or bill: Steele's Appeal, 22 P. F. Smith 103. See Owen's Appeal, 11 W. N. C. 490.

Mr. Justice PAXSON delivered the opinion of the court, January 7th 1884.

It was decided in Nailer *v.* Stanley, 10 S. & R. 450, that, where mortgaged land was sold in pieces and at different times, the several pieces were liable for the mortgage debt in the inverse order of their alienation. This principle was fully recognized in the later case of Cowden's Appeal, 1 Barr 267, and has been uniformly followed since. It is now settled law. In Carpenter *v.* Koons, 8 Harris 222, it was held, the principle did not apply to two or more purchasers at a sheriff's sale, who had bought subject to a common incumbrance. In such instances equality is equity.

In this case, John A. Carothers purchased about fourteen acres of land of Mrs. Margaret Chalfant, and gave to her a purchase-money mortgage covering the whole, for $14,040. He then divided the property into lots for the purpose of sale, which we will designate by classes, as 1, 2 and 3. Afterwards, he mortgaged class 1 to Wm. A. Shaw, the plaintiff below; then he mortgaged class 2 to Robert E. Stewart, one of the defendants below; lastly, he conveyed class 3 to Robert Milligan in fee, and by divers subsequent conveyances, the title thereto became vested in Mary E. Milligan, another of the defendants below, and one of the appellants.

During all this time, the paramount mortgage to Mrs. Chalfant covered all the lots.

[Milligan's Appeal.]

Stewart, one of said mortgagees, foreclosed his mortgage, and bought the lots embraced therein, at the sheriff's sale.

Subsequently, Carothers was adjudged a bankrupt in the United States District Court, and his title became vested in his assignee. The latter sold the lots in class 1, in pursuance of authority derived from the court in bankruptcy, free and divested from all liens, and realized therefor the sum of $7,700. The register in bankruptcy distributed the proceeds to the Chalfant mortgage, disregarding Mr. Shaw's claim to have the proceeds applied to his mortgage, which, as before stated, covered this class of lots. As the Chalfant mortgage was the first lien, this distribution could not have been avoided. The result was, however, that Shaw found his security swept away for the benefit of the subsequent incumbrancers and purchasers of other portions of the property. He therefore filed this bill in the court below for the purpose of being substituted to the rights of the Chalfant mortgage upon classes 2 and 3. The court below so decreed, which was the occasion of this appeal.

It was contended for the appellants that the case came within the ruling referred to in Carpenter v. Koons; that the parties stood in the relation of purchasers at a sheriff's sale, where equality is the rule, and that at most it was a question of contribution, and not of subrogation.

We are unable to see the force of this position. When Shaw took his mortgage on class 1, he had an equity to compel Carothers to pay the paramount mortgage out of the remaining portions of the property not embraced in his (Shaw's) mortgage. This is too clear to need elaboration. It was not the case of a purchase subject to the Chalfant mortgage, with a portion of the purchase money withheld to meet it. No such element exists in the case. It is true, Shaw's mortgage was in point of fact subject to the paramount mortgage, but he held no funds of Carothers to meet it. On the contrary, he had the clear equity, as before stated, to compel the latter to pay it out of the remaining property. This equity Carothers could not defeat by subsequently conveying or mortgaging classes 2 and 3. Such grantees or mortgagees had record notice of Shaw's equity.

I see no significance in the fact that Stewart became the purchaser at a judicial sale under his own mortgage. It did not change his position in any essential degree. He has the rights as purchaser at such sale which he previously held under the mortgage—nothing more.

Without any action on the part of Mrs. Chalfant or any of the parties, the land bound by Shaw's mortgage has thus been taken to pay the paramount mortgage, which, as between the parties, Milligan's land first, and Stewart's land secondly was

liable for. We do not think the cases of Lloyd *v.* Galbraith, 8 Casey 103 ; and Conser's Appeal, 11 W. N. C. 220, are in conflict with this view. As was correctly said by the learned judge below : " These cases differ from the present one in this, that the parties seeking to be subrogated to the rights of creditors who had liens on two tracts of land, did not acquire their liens until after the common debtor had aliened that part of the land sought to be reached. This is an essential difference."

Nor do we see any force in the objection that because the Chalfant mortgage has been paid by process of law there can be no subrogation. Actual payment discharges a judgment at law ; but in equity, it may still subsist if the justice of the case requires it. And an equitable right to such judgment may exist without any actual assignment of it : Fleming *v.* Beaver, 2 Rawle 128 ; Morris *v.* Oakford, 9 Barr 498 ; McCormick's Admin. *v.* Irwin, 11 Casey 111.

It was further contended for the appellants that the right of Shaw to have lots 2 and 3 sold in relief of his mortgage, can only be enforced in accordance with the provisions of the Act of 22d April 1856, P. L. 534. This Act did not give the equity or the right to substitution. It provides merely the mode of enforcing such right in certain cases. The object of the Act, as was said in Arna's Appeal, 15 P. F. S. 72, was " to secure the legal rights of the plaintiff in a judgment as well as the equities of the terre-tenants under a common incumbrance." Hence, where the plaintiff in a judgment which binds several parcels of real estate, is about to proceed to collect his money, and there are equities between the terre-tenants, it is made lawful by the Act for any one who is entitled to contribution or subrogation, in case of payment, to apply to the court for a rule upon the plantiff to show cause why he should not levy upon and make sale of the property in such way as to satisfy the equities between the parties; and if the plaintiff shall refuse to accept the debt and assign the judgment, the court may control the execution so as to subserve such rights and equities. As was said in Phelps's Appeal, 2 Out. 546 : " The legislature has seen fit to enact, in order to secure the rights of the judgment creditor, and to prevent any delay or embarrassment to him, that he shall have the option offered to him of accepting his debt and assigning his judgment before he can be controlled in the order in which the different tracts of land subject to his lien shall be sold under his execution." We can readily understand how a judgment creditor whose process is about to be interfered with by terre-tenants, may say, you must proceed under the Act of 1856, and pay my judgment before you can control the process for its collection. We have not such case before us, and we are unable to see how the Act of

[Richter *v.* Pennsylvania Co.]

1856 could be applied ; it seems intended for cases in which no sale of the property has taken place. This is manifest from the provisions for the control of the process. I do not say that no case could arise where the Act might not be invoked after sale, but it would be more than doubtful if it could be regarded as an exclusive remedy in such case. We are satisfied it is not so here.

The decree is affirmed, and the appeal dismissed at the costs of the appellants.