Rachel H. Turner, to use of William Hartman, *v.* Elias A. Flenniken et al., and Levi Sharpneck, terre tenant, Appellant.

*Mortgage—Payment—Release of part of land—Sale—Notice—Equity.*

Pieces of land subject to a common incumbrance when sold successively are liable for the incumbrance in the inverse order of alienation.

A mortgagee who, with knowledge of a sale and conveyance by the owner of a portion of the mortgaged premises, subsequently releases other portions of the land, cannot levy his debt out of the portion of the land first sold.

In such a case it is not necessary that the mortgagee should have seen the deed or been informed of the exact date or terms of the sale. It is

enough if he had knowledge of the fact that the purchaser was in posses-
sion claiming under a previous sale from the mortgagor.

If the question of knowledge is involved in doubt, it should be submit-
ted to the jury with instructions to find for defendant if they found that
the mortgagee knew of the prior sale when he executed the subsequent
release.

*Mortgage—Presumption of payment—Evidence.*

On a scire facias sur mortgage, where it appears that the writ was is-
sued twenty-eight years after the date of the mortgage, evidence of pay-
ments on account of the mortgage made three years before the date of the
writ, is admissible.

Argued Oct. 3, 1894. Appeal, No. 277, Oct. T., 1894, by
Levi A. Sharpneck, from judgment of C. P. Greene Co.,
April T., 1891, No. 161, on verdict for plaintiff. Before STER-
RETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN,
and FELL, JJ. Reversed.

Scire facias sur mortgage. Before INGHRAM, P. J.

At the trial it appeared that Elias A. Flenniken, James D.
Flenniken and William F. Flenniken, three brothers, some time
prior to April 10, 1863, inherited from their father a tract of
three hundred and sixty-six acres of land, situate in Cumber-
land township. On April 10, 1863, they made to Mrs. Rachel
H. Turner, of Bucks county, Pa., a bond in the penal sum of
$2,800, conditioned for the payment of $1,400 payable on de-
mand, with interest from date. To secure this bond the mort-
gage in suit was made and executed by them bearing even date
therewith upon the whole of the 366 acres of land.

Defendant offered in evidence articles of agreement dated
March 26, 1868, between James D. Flenniken and Richard
Moffett, wherein the said James D. Flenniken sells to said
Richard Moffett about one hundred acres of land, bound by the
mortgage. This to be followed by evidence that James D.
Flenniken, William F. Flenniken and Elias A. Flenniken, on
Dec. 4, 1869, conveyed to said Richard Moffett ninety-one acres
and twenty-seven perches of land, covered by the mortgage, for
the sum of $5,470. This to be followed by evidence of the
payment of the full consideration, to be followed by evidence
that Richard Moffett, on April 2, 1877, sold and conveyed the
said ninety-one acres and twenty-seven perches of land to Levi
A. Sharpneck for six thousand dollars, and that said money was

paid.   That Richard Moffett and Levi A. Sharpneck had held possession of that ninety-one acres and twenty-seven perches, from the date of the purchase by Richard Moffett in 1868, down to the present time, a period of twenty-five years.   That after the sale of the land to Moffett, and Sharpneck, claiming under him, had held the land for upwards of twenty years, that the mortgage of Rachel Turner was released by the holder thereof from one hundred and thirty-nine acres and thirty perches, being the land of James D. Flenniken, one of the mortgagors, and that James D. Flenniken still owns said land and is in possession of the same.   That afterwards, on the 1st day of August, 1887, William Hartman, the assignee of said mortgage, released ninety-three acres and forty-three perches of land covered by the mortgage, being the land of William F. Flenniken, one of the mortgagors, the son-in-law of said William Hartman.   This offered for the purpose of showing that the land now in possession and ownership of Levi A. Sharpneck is in law released from the lien and payment of mortgage in suit.

This to be further followed by evidence that neither Richard Moffett nor Levi A. Sharpneck, had any actual notice of the existence of this mortgage against the land at the time they bought it, nor for many years thereafter, and that they have never paid anything on the same and had no knowledge that anything had ever been paid by any one on said mortgage, neither did they consent to such payment.   This offered in evidence with the cross-examination of William Hartman wherein he states that he knew that Richard Moffett had occupied this land many years ago and that the same land had been in possession of Levi A. Sharpneck for many years.   And further in connection with the testimony that the mortgage in suit was acknowledged before 'Squire Hartman in 1863, and at the time he took it he therefore had knowledge that the presumption of payment had arisen against it.   That the deed from Flennikens' to Richard Moffett was recorded in the recorder's office of Greene county, Pa., Dec. 29, 1873, and the deed from Richard Moffett to Levi A. Sharpneck was recorded May 3, 1877, in the recorder's office of Greene county, Pa.   This evidence to be followed by proof that the land released by the mortgagee for James D. Flenniken, 139 acres, and the land released for William F. Flenniken of 95 acres were of value more than suffi-

cient to pay the balance of the mortgage debt. Objected to as incompetent and irrelevant. Objection sustained and exception. [3–5]

The testimony of Hartman on cross-examination was somewhat contradictory as to whether he knew of the prior sale when he executed his release.

Plaintiff's point was as follows:

"1. Under all the evidence in the case the verdict of the jury should be in favor of the plaintiff and against the defendant, terre tenant, Levi Sharpneck, for the amount of plaintiff's claim, debt and interest to date. *Answer :* Affirmed. This point is correct and is affirmed, provided you find from the evidence that the mortgage has not been paid, or in other words that the presumption of payment, presumption by the lapse of time, has been rebutted by testimony of the plaintiff; and if you further find the fact that William Hartman, plaintiff, had not actual notice of the purchase by Levi A. Sharpneck of the land or by Richard Moffett in the first instance, and Levi A. Sharpneck afterwards at the time when the defendant claims he became the purchaser. With that qualification the point is correct and is affirmed." [8]

Defendants' points were among others as follows:

"3. The presumption of payment having arisen against the mortgage, the receipts to the mortgagors offered in evidence by the plaintiff, for the purpose of removing such presumption, are of no avail against a purchaser of a portion of the mortgaged premises, the plaintiff not having shown nor offered to show that any such payments were made by the purchaser nor with his knowledge or consent." Refused. [6]

"4. As against a purchaser of a portion of the mortgaged property, the evidence of the plaintiff as to payments having been made on said mortgage for the purpose of removing the presumption of payment is a nullity, if the jury believes that said mortgage has been given and collectible for a period of about 30 years before the bringing of this suit." Refused. [7]

Verdict and judgment for plaintiff.

The terre tenant appealed.

*Errors assigned* were (1, 2) admission of evidence of payments on the mortgage recited in the opinion of the Supreme

Court; (3–5) above rulings on evidence; (6–8) above instructions; quoting bills of exceptions and instructions.

*R. F. Downey*, for appellant.—After twenty years the law presumes that every debt is paid, no matter how solemn the instrument may be by which such debt is evidenced: Foulk v. Brown, 2 Watts, 209; Phila. v. Comber, 15 W. N. 502; Peter's Ap., 106 Pa. 343; Smith's Est., 152 Pa. 102.

The receipts themselves were no evidence of payment and should not have been received: Cremer's Est., 5 W & S. 331; Lash v. Von Neida, 109 Pa. 211; Runner's Ap., 121 Pa. 649; Shaffer v. Shaffer, 41 Pa. 51.

The court should have passed upon the sufficiency of the proof to rebut the presumption of payment and not have left it to the jury: Peters' Ap., 106 Pa. 343; Beale v. Kirk, 84 Pa. 415.

The release by the mortgagee's assignee of the other lands discharges the land sold to Richard Moffett: Lowry v. McKinney, 68 Pa. 294; Martin's Ap., 97 Pa. 85; Horning's Exr.'s Ap., 90 Pa. 391; Paxton v. Harrier, 11 Pa. 312.

*James E. Sayres*, for appellee.—The burden of proof after twenty years is only shifted: Peters'. Ap., 106 Pa. 343.

There was no actual or constructive notice of the sale to Moffett, given to the mortgagee: McIlvaine v. Mut. Assurance Co., 93 Pa. 30.

The doctrine of liability in the inverse order of alienation has no application here, for want of actual, or constructive notice.

Sharpneck and his vendor were bound to take notice of our recorded mortgage.

OPINION BY MR. JUSTICE WILLIAMS, Oct. 29, 1894:

The important facts in this case are not in controversy. Three brothers, viz, Elias A., James D. and William F. Flenniken became the owners by inheritance, at some time prior to April, 1863, of a tract of land containing three hundred and sixty-six acres. They mortgaged this tract to Rachel H. Turner on the tenth day of April, 1863, for the payment of the sum of fourteen hundred dollars with interest, and the mortgage

was duly recorded.   In 1864 they sold forty-five acres off the land to B. F. Wright, and Mrs. Turner released the lot so sold from the lien of the mortgage.   They next sold a lot containing ninety-one acres and twenty-seven perches to Richard Moffett, who went into possession in 1868.   In 1869 he paid the purchase money, which was five thousand four hundred and twenty-seven dollars, and received from the three brothers a deed of general warranty for the land.   He had no actual knowledge of the existence of the mortgage and for that reason did not demand a release from its lien when he paid the purchase money to the Flennikens.   He continued in possession till 1877 when he sold to Sharpneck, the appellant, for six thousand dollars.   Sharpneck paid the purchase money and took his deed in May, 1877, recorded the deed, and went at once into possession.   He too was ignorant of the existence of the mortgage.   In April, 1877, Hartman, who was the father-in-law of William F. Flenniken, took an assignment of the mortgage, upon which there appeared to be due the sum of six hundred and nine dollars.   During the following month he released the lien of the mortgage from one hundred thirty-nine acres and thirty perches of the tract owned by and in possession of James D. Flenniken.   In August of the same year he released the balance of the tract, containing ninety-three acres, which his son-in-law, William F. Flenniken, had sold to John Grago.   The portions of the land so released by Hartman were worth many times the amount remaining due upon the mortgage, and, when they were made, no part of the mortgaged premises remained unreleased except the lot sold to Moffett in 1868.

Upon this state of facts the scire facias in this case was issued and served on Sharpneck as terre tenant.   He defended upon two grounds: first, that the mortgage having been given in 1863 was, in 1891, when the writ of scire facias was issued, presumed to be paid; and, second, that the releases by Hartman of the land which was liable to him in case he was compelled to pay the mortgage had deprived him of the power to reimburse himself, and were for that reason, on equitable principles, a release of his land from liability.

The first line of defence was met by the testimony of witnesses showing what payments had in fact been made on the

mortgage and how much remained due upon it. This was a competent reply to the presumption of payment, and, if the evidence was sufficient to satisfy the jury that a balance remained due, it effectually disposed of this branch of the defence.

The second line of defence was objected to as irrelevant and incompetent. The objection was sustained and the evidence offered in support of it was excluded. This ruling, which is the subject of the third, fourth and fifth assignments of error, raises the important question in this case. The equitable doctrine asserted by the appellant seems to have been recognized to some extent at a very early day in this state. It was distinctly formulated and asserted in Nailer et al. v. Stanley, 10 S. & R. 450. In that case a judgment was a lien upon three or more lots of land. One of these was then sold to A, the value of the remaining tracts being more than enough to pay the judgment. A second tract was then sold to B. The judgment creditor levied on the tract sold to B, who was compelled to pay the judgment. He then sought contribution from A, but it was held that he had no equitable right to resort to A, or his lot, as his title was acquired subsequently to that of A. This has been followed in an unbroken line of cases extending over more than seventy years. In Mevey's Appeal, 4 Pa. 80, decided in 1846, the rule was extended to mortgages, and it was held that the court " may and will so direct the sheriff to sell, and in such order, as will produce the most money and at the same time protect the rights and equities of the terre tenants."

The consequences to the mortgagee of disabling himself for protecting the equities of terre tenants were first declared in Paxton v. Harrier, and Henniger, terre tenant, 11 Pa. 312. In that case a tract of land was covered by a mortgage. The first piece sold was that bought by Henniger, who paid Harrier, the mortgagor, the purchase money. The balance was sold to several purchasers, in separate parcels, each of whom paid a part of the mortgage debt proportioned to the number of acres bought by him, and received a release of his land from the lien of the mortgage. The mortgagee then issued a scire facias upon the mortgage, and served Henniger as terre tenant, and sought to recover the balance of the mortgage debt, which bore

the same relation to the whole debt as the quantity of land in Henniger's lot bore to the whole tract covered by the mortgage. Henniger set up as a defence the release of the lots, subsequently sold, by the mortgagee, and the fact that his remedy over against them had thus been taken away by the act of the mortgagee. This was held to be a good defence upon the scire facias because the land released was primarily liable for the mortgage money as between its owners and the prior vendee.

This case was followed by Martin's Appeal, 97 Pa. 85, in which the rule was stated to be that pieces of land, subject to a common incumbrance, when sold successively by the owner, are liable for the incumbrance, in the inverse order of alienation. Consequently if the holder of the incumbrance releases the pieces last sold, this will, if the pieces released are of sufficient value to pay the debt, operate to discharge the lien of the incumbrance on the parts previously sold. This was so far qualified in Schrack v. Shriner et al., 100 Pa. 451, as to make the knowledge of the holder of the mortgage an element to be considered in the application of the equitable doctrine. If he was without any knowledge of a previous sale of a part of the premises, and acted in good faith in the making of a release for another part of the land bound by the mortgage, then the rule of Paxton v. Harrier would not apply ; but if he knew of the previous sale or of facts that fairly put him upon notice, then the subsequent release of the remainder, if of sufficient value to pay the debt, would operate as a release of the lot first sold. This case was commented on and followed in Milligan's Appeal, 104 Pa. 503.

The distinction between junior incumbrancers and successive purchasers is considered in McIlvaine v. The Mutual Assurance Company, 93 Pa. 30. A junior incumbrancer must give notice of the position of his lien to the mortgagee if he would affect him with notice of his situation. Knowledge in fact of the position of a purchaser of land bound by the mortgage is enough, no matter how that knowledge is acquired.

If it was clear upon the evidence that Hartman had knowledge of the possession and claim of Moffett and Sharpneck when he made the releases to the holders of the balance of the mortgaged premises, then the court below should have negatived

the plaintiff's first point, and given a binding instruction in favor of the defendant.   If this question was involved in doubt it should have been submitted to the jury with instructions to find for the defendant if they found Hartman knew of the prior sale when he executed the subsequent releases.   It is not necessary that he should have seen the deed or been informed of the exact date or terms of the sale.   It is enough if he had knowledge of the fact that Moffett, or after him Sharpneck, was in possession claiming under a previous sale from the mortgagors.

The judgment is reversed for the reasons now given and a venire facias de novo awarded.